The next case, number 25-1516, Avanru Development Group, Inc. v. Town of Swanzey, NH, et al. At this time, would counsel for the appellant please come to the podium and introduce himself on the record to begin? Good morning. My name is James Harris. It is my privilege to represent the appellant, Avanru Development Group. With the court's permission, I would like to reserve one minute for rebuttal. You may. May it please the court. Avanru asserts two distinct claims, an equal protection claim and a substantive due process claim, and the district court erred in dismissing each of them. In dismissing the equal protection claim, the district court imposed what it referred to as a, quote, additional requirement, that Avanru must prove malicious bad faith intent to injure in addition to the other elements of a claim. This court has not articulated a test where malicious bad faith intent to injure is truly an additional element. The district court compounded this error by making certain factual findings, particularly with respect to the defendant's intent, and that those findings were inappropriate on a motion to dismiss. So put together, the district court did not properly consider the equal protection claim. As to the substantive due process claim, this court has stated that clearly violating state law or maliciously delaying a project does not automatically mean that the constitutional right to due process was violated, and it's our position that the district court misapplied this language. That should not mean that violations of law are irrelevant, that they cannot be considered as part of a pattern or pretext that is a violation. But the district court never considered this. This court's rationale for such a rule is grounded upon the belief that there are adequate state court remedies, such that we don't need to bring zoning cases in federal courts. But that's not true on these facts, where Avanru eventually received its local permits and approvals, but there is no state court avenue for monetary relief. Our position is that the door has been left ajar for this case. We acknowledge that this court, like courts of appeal from other circuits, have explicitly expressed the desire to limit zoning cases in the federal system. We observe, however, that most other courts have adopted a lesser standard that still deters unworthy lawsuits from federal courts. And although Avanru's complaint meets this circuit's standard, when facts are construed appropriately at the motion to dismiss days, Avanru's complaint certainly meets the standard in other jurisdictions. With respect, turning to the equal protection claim in a little more detail. The Supreme Court tells us that the claim is based on where there is disparate treatment and no rational basis for that difference in treatment. This court in Barrington Cove directed us to look for impermissible considerations. And it gave us examples of impermissible considerations, such as race, such as religion, such as an intent to inhibit or punish the exercise of a constitutional right. But then the court used the connector or, malicious bad faith intent to injure. And the district court changed that or to an and. We note that it is not an exhaustive list of what could possibly be an impermissible consideration. And tracing that back one step further to Rabinowitz, it is clear that malicious bad faith intent to injure is not an additional element, but it is yet another way to prove an equal protection claim. But you don't have any other impermissible ground, do you? We do. What is that? So we allege, Your Honor, that the town exhibited an improper animus against affordable housing and senior housing. And the district court, in a very brief sentence, just concluded that's not like racial animus and that was the end of the analysis.  So in other words, the district court's analysis doesn't hinge on finding some impermissible ground and then saying that's not enough because you also have to have malicious. I think the district court certainly did construct her opinion in that way. She referred to this as an additional element. I understand that. But in practice, in applying it, the district court didn't find any impermissible ground and say that's not enough because you also have to have something malicious. The district court did not, other than saying I don't find it possible that there could be animus towards, legal animus towards affordable housing or senior housing. But the majority of the decision is focused on this bad faith intent to injure. Right, because that would be a permissible, that's a standalone impermissible ground. It would be a. If you showed that, that would be a problem. It would potentially be a problem that the district court used the word and rather than or if the district court also found an additional impermissible ground. Yes. And then said but because you haven't shown maliciousness, you lose. But the district court didn't do that. Yes. I agree with that. So who cares about the and? And then why don't we just get to the question of can you show the district court was wrong in saying that there was no maliciousness? Yes. The court made several factual findings on a motion to dismiss that we find are inappropriate. And many of the cases that we see that come to this court are at the summary judgment phase. But I'll give an example of one such factual finding. The district court determined that when Defendant Johnson admitted on the record that Avinru had been treated differently, Judge McCafferty said that that cannot possibly be evidence of animus because Defendant Johnson, she determined, was really concerned about the project size and location. Now, making that determination on a motion to dismiss, I think, has its own problems. But it's even more glaring in this case in that she could not, Defendant Johnson could not possibly have been concerned about the size because the project was well within the standards set by the townspeople of Swansea. It was below the height limit that the townspeople of Swansea had set. There were no density requirements. It met all of the requirements. And it was also in a location within walking distance of others. Can I just ask you, there was a tremendous amount of documentary information attached to the complaint. And I think, to be fair to the district court, the way I understood what she said about the particular example that you're citing right now is she has to look at whether your allegations are plausible, give rise to plausible claims. That's her obligation. And she, in her view, says that what you quote in your complaint, you quote out of context. So she looks at the entire context of what Member Johnson said. And she says, based on that, you know, the transcript, which is just a document that she can read, that you've sort of taken the statement out of context and therefore she doesn't find a plausible allegation. Why is that wrong, what she's doing in a motion to dismiss? No, I have no problem, Your Honor, with Judge McCaffrey looking at the rest of the transcript. But my point is that the rationale that Judge McCaffrey concluded with respect to that statement is that Defendant Johnson was concerned about the size of the location. And my point is that's not a permissible consideration in light of the fact that the zoning ordinance sets objective standards. If the height is 45 feet, for example, and this project is 43 feet, it's an impermissible consideration for the, for Defendant Johnson to say. I guess what I'm saying is something a little different, is that she looked at the allegations in your complaint and then she went back to the transcript and said, they're just not supported by the transcript and therefore I find the claims not plausible. So that was her conclusion, is I understood it, that what you were saying, that it was based on animus against affordable housing, which, you know, I understand why your client would be upset about that, but the district court says it's just not supported by the transcript and therefore it's not plausible. So I don't see that as a factual finding. I'm trying to understand what you think she did wrong there as a motion to dismiss analysis, which she's required to do. Yes, and again, I have no objection to her looking at the full transcript or looking at the other materials. We provided them because we wanted the court to compare this project to the way it's Is it plausible to conclude, because we've now read the entire portion there, why is it plausible for us to conclude that, given what she actually said, Member Johnson, that really what she meant was that she had animus against affordable housing? We take objection to the way Judge McCafferty handled it, is that she looked at each of these allegations, particularly with what happened before state proceedings, and looked at them one at a time in isolation. And our position is, there's a pattern and there's a pretext that we should be able to explore, that when you take each one of those in isolation and you don't look at the entirety of what happened to Avinru, you don't get the proper weight. Is the thrust of your point that when you look at the transcript, it's not a response to your allegation that she had animus towards affordable housing, to say she was concerned about size? Correct. Because, insofar as she's talking about size, that's obviously pretextual, this is the way your argument runs? Yes, Your Honor. Since the size wasn't of a size that causes a problem under the zoning code? Yes, Your Honor. And location, the other item that Judge McCafferty fixed on. The other three market rate projects that we identify in the complaint are all within walking distance of my client's airport. But even if, I mean, how are we supposed to, on a 12 v. 6, evaluate the district court's assessment? Let's just stick with this one for a second. You say it's animus towards affordable housing. You look at the transcript and she's complaining about the size of the housing. Let's say you're right. She shouldn't be worried about size because the code allows you to be even bigger. But she's not talking about affordable housing, she's talking about the size of it. How do we know that therefore we say, oh, really what she's upset about is affordable housing, not the size? Well, a few things. If we had been allowed to proceed through discovery, we of course would have been asked, we would have allowed defendant Johnson. But you've got to get to discovery, you've got to have a plausible allegation at hand. Correct. The plausible allegation is with respect to the comparison of the other three market rate projects, many of which, several of which were larger than my client's, and that question never came up. Judge McCafferty didn't undertake any of the analysis of the comparison to the other projects, so we don't know how Judge McCafferty would come out on that. She just didn't address any of them. But that is strong evidence, is our position of the pretext, that the way these other projects were handled versus the way... And those were not affordable housing projects? Correct. They were all market rate. They were not senior housing and they were not affordable housing. I see my time is up. I haven't addressed the substantive due process question, but if the court has any questions, I'd be happy to answer them. If not, we'd ask the court to reverse. Just one last question. Let's say you're right that there was a hostility towards affordable housing. What's the authority you're relying on that says that can ground the claim? I've seen... I found no equivalent, despite trying. What I can say is that the language from this court, I have not construed to be an exhaustive list, such as race, such as religion. The PFZ case talks about actions that are legally irrational and not sufficiently... The one case you rely on that we went through it, that there seemed to be allegations of a personal animus to destroy that developer. SBT might be the case. Yes. And that's one where this court reversed. We don't have anything like that here. We have enough... Or is the idea that the hostility to affordable housing means there was a desire to destroy affordable housing developers? He is one. Therefore, it's just like ST. Yes. And there's evidence that I think is very similar to SBT in this case, where you have poison pills that are introduced into the project, like, okay, well, now you have to put a pitched roof on, so now you run into the FAA problems. All aimed at reducing the size of the project were also poison pills because it rendered the project economically unviable. Those are parallels to SBT that I think warrants the same result here, which is, let's allow my client to take some discovery and further this case. Okay. Thank you, Your Honors. Thank you. At this time, would counsel for the aplees please introduce themselves on the record to begin? May it please the court. I'm Emily Gehring. I represent... Just move the microphone closer to you. Thank you. Let's start over again. I'm Emily Gehring.  May it please the court. I'm Emily Gehring. I represent the apellee, the Town of Swansea, as well as the individual members of the ZBA and Planning Board. On a motion to dismiss, the court acts as a gatekeeper to assess the complaint and determine whether there is any conceivably viable claim that can move forward. And in this case, it meant that the district court went through both the complaint and the voluminous evidentiary record that was attached to the complaint to see if there was any viable legal theory that this particular course of conduct arose to anything more than a garden variety land use dispute. In going through that voluminous record, the court was properly able to determine that this is just a run-of-the-mill land use dispute and a regular developer dispute with a municipality. Because that voluminous record didn't show anything out of the ordinary, it was proper for that court to determine that there is not an equal protection claim or substantive due process claim that could conceivably move forward. Therefore, it's also proper for this court to affirm the dismissal. Counsel, why wasn't the record enough to get the plaintiffs to discovery on their equal protection claim because, or the complaint and the attachments? Because what they've alleged is that they were treated differently from other similar development companies. And, you know, you sort of point out that everything went smoothly with the second project, the airport project. But I think that's because a lawsuit had already been filed at that point. So there would be reasons why your clients would have been acting quite differently at that stage. And at the first stage, which is the airport project, if I have it correct, you know, they've made a number of allegations about why they were treated quite differently. And yes, they may not have sort of that financially insolvent claim that existed in SBT, but that was a summary judgment case, if I'm correct. So why shouldn't they at least be given the opportunity to do the discovery and see if, in fact, the different treatment was based on something that would rise to a high enough level under our case law to allow them to potentially get to a trial? Certainly. So there's a couple of things you raised, though, that I want to address. So the first is that there was no reasonable inference that could be made from the record that there was something more here than just a land use dispute. So it's not enough in a land use context to get a planning and zoning decision into federal court by just saying other developers were treated differently. Because every property is different, every project is different, every concern that a butter's raised is going to be different. Was there a determination that the comparator properties weren't good comparators? So the court didn't need to get there, and so I want to complete with the equal protection, because you have to show something more. There has to be this impermissible consideration, which is why you were treated differently. It's not enough to say other developers were treated differently. You have to then also allege it was because of this impermissible consideration. When you go through the record, there are no impermissible considerations. All of the considerations that were being made were very typical land use. Height, density, pedestrian infrastructure, traffic counts, very standard land use and planning. Right, but what they're saying is that those same concerns could have been raised against similar developments, and they weren't. And they're saying the difference is because they were affordable housing and the others weren't. And so why isn't that enough for them to get to discovery to test whether, in fact, there was an animus against affordable housing? Is that a- Do you have a legal argument that that wouldn't be enough, or- There's no reasonable inference that can be made. The burden is on the plaintiff to reasonably allege that this conduct occurred, that there was some concern about affordable housing. That doesn't exist. It's directly refuted by the evidentiary record. Again, the West Swansea project is another point here. This same developer sitting in front of the same boards at the exact same time as the airport project was rolling out also had an affordable housing project that went through very smoothly, which undercuts this argument. Tell me if I'm wrong, because I know you know the facts better than I do, but I thought that by the time they started considering the West Swansea project, a lawsuit had already been filed about the airport project. The statutory appeal of the ZBA decision was, which is, it's different than the nature of the federal lawsuits. I understand, but what I'm just saying is the same decision makers now realize they could be sued over their decision, because they had been already, so- That is correct, but when the airport project went back to the planning board, they initially denied that also, which is, I think, indicative of the fact here that litigation alone was not a concern for how they were behaving, because they were still willing to deny- But remember, we have to draw all the inferences in their favor at the motion to dismiss stage, so perhaps move to, and what other arguments you have about why it's not even plausible that they've alleged that there was animus based on affordable housing. Certainly. So again, we don't conduct litigation that you file a lawsuit, and then you get discovery, and then maybe you go on a fishing expedition and find some ill intent. If you can't credibly allege it at the outset, you don't get discovery, but it's important to remember that the ZBA and the planning board are public bodies. Through 91A and then the state statutes that enable both the planning board and ZBA, everything has to be done in public. So discovery isn't going to yield anything more than what is already included in the complaint here, and when you read the meeting minutes and the transcripts, the boards were incredibly thoughtful about warning the public, about warning the members, that people cannot have communications outside of the public hearing that's recorded on the record, because they understood that this was going to go through litigation, these matters were going to be pending for a while. So there's, if you have the entire evidence, you're in record. Are you saying there's no direct evidence alleged, or no direct allegation of animus about affordable housing? They're just saying this happened to be an affordable housing project. The other ones were not. It was denied, therefore it's a class of one? I'm sorry, I don't think I'm understanding the question. Are you saying the problem with the complaint here is that it doesn't allege any direct basis for the claim that the reason they denied this was because it was affordable housing? I'm saying the problem here is there's no reasonable inference that can be drawn. You keep saying that. Why? Why do you say that? What is missing? There is no discussion about affordable housing. Okay, so you're saying there's no direct evidence? There's no discussion. The only time that affordable housing is raised by the boards is when they... No, we're talking about in the complaint, counsel. Oh, so in the complaint, there are lots of allegations. So the complaint that the plaintiff's attorney drafted has lots of allegations about how this is a truly horrendous situation. The problem is that those are all conclusively contradicted by the evidence. And so in other words, when you look at, since they put all this, they don't allege any direct statement by anybody saying this is an affordable housing project, that's why we want to kill it or anything like that.  Right. They just say this is because it was affordable housing, but then when you look at the record that they included attached to the complaint, you don't see that being discussed. That's the idea. That is it. That is it precisely. And so in the complaint, they point to Member Johnson's statement, which you've already raised. And it appears that you've already read that. When you read Member Johnson's statement, it is talking about the permissible considerations of density and over-intensification of land. So just so if I can make an analogy, in your view, this case is like SBT if there wasn't that email saying we're going to render him insolvent. Well, I would say our facts are highly distinguishable from SBT. How otherwise are they distinguishable? It was egregious conduct in SBT. You had a board who had no jurisdiction over a developer exerting jurisdiction when it knew it didn't have that. You had retaliatory litigation that was filed by the town. You had huge procedural irregularities where you had the board saying you need to get modified plans to us in the next 24 hours. They were issuing cease and desist orders that didn't go to the developer, were published in the newspaper. They were withholding certificates of occupancy as retaliation for litigation. I mean, that is the type of extreme conduct where the door in federal courts has been left slightly ajar. But how about here, though, like the concern being raised about the size of the property when that's not a concern that the code makes worthy of concern? So I think that's an overstatement to say it's not a concern of the planning board to look at the size of the building. The exact thing the planning board does is figure out how to cite projects on a property. But even then, let's say that that's correct, that it was wholly outside of the planning board's scope to look at the size of the project because it was authorized by the ordinance. That's the misunderstanding or misapplication of law. And the Cloutier case tells us that the misunderstanding or misapplication of law, even if it's intentional,  But that's what I'm just trying to get back to, the STB or SBT, trying to get back to SBT and what's different. Because okay, you have various allegations how they seem to be raising concerns that they shouldn't be raising, and they allege a whole bunch of them. And I don't take you to be refuting that those were all proper concerns. You don't seem to say all of those concerns were proper under the code. You just say it's not enough to show that they were doing things that were improper under the code. I think there's no reasonable way you could infer that anything improper has been happening under the code here. But even if you did, the Cloutier case tells us that's just the misunderstanding or misapplication of the ordinance. That doesn't get you into federal court. Correct. So then the thing that's missing here is anything equivalent, and this is your view, anything equivalent to that email in SBT about we're trying to stop them from being insolvent? I think the pattern of abuse in SBT, I mean, the email in SBT where a member of one of those boards, I think it was the Conservation Commission, specifically says, yes, we got them insolvent. That was the plan all along. That's a pretty harmful email. But the pattern of abuse in SBT was enough to say this is something more than a routine land planning dispute. And why is the pattern of abuse alleged here different? So just on focusing on that part. The difference in SBT is that there was a well-crafted complaint, and that was it. So on a motion to dismiss standard, the court was bound to look at those allegations and take them as true. Here, the court was bound to look at the complaint and accept those allegations as true. But then it also had 1,700 pages of direct evidence that conclusively refuted anything in the complaint. The court no longer needed to take those conclusive allegations as true when it had evidence that demonstrably showed those are not true. That's the distinction between SBT, which was able to overcome dismissal, and our case where dismissal is proper. As a legal matter, what is your position on whether discrimination against developers who build affordable housing, if it were, I understand you think it hasn't been adequately pled, but if it were, what's your position as a legal matter whether that would be enough under our case law to bring this out of the ordinary dispute? I'm unaware of affordable housing. I'm unaware of any decisional law that would say that consideration of affordable housing is given the same type of protections as consideration of race or sexual orientation or any of the other classifications that are brought up in the cases. I will say that Judge McCafferty did credit that argument and said, taking this in the light most favorable to the plaintiff, let's assume that affordable housing is a protected class, and even then, you don't have enough to establish this claim. Do you have a position, though, just so we understand what your position is? My position would be that the affordable housing is not a protected class in the way that these cases are considered. I don't quite understand what that means. It's not a protected class in the sense that strict scrutiny doesn't apply when we have cases involving it. Fine. In the class of one, the question is whether they're singling out somebody for such an arbitrary reason that it's impermissible under the—because it's not a protected class to be a person who doesn't go insolvent, but we still thought that was an impermissible reason to discriminate against that developer. Why would it be any different to say that this is an—it's not something that the code allows. There's nothing at all under it. It's not like it's a misapplication of the code. It's just a hostility because this person wants to build that kind of housing. Why is that a permissible factor to single out somebody for? I will say, I don't think it would be impermissible for the zoning board or the planning board to consider that because it does touch on the issues of surrounding property values, the character of the neighborhood. I mean, I don't know whether or not if the board had actually come out and said, we don't want this project because it's affordable housing. I don't know if that's sustainable or not. The facts are, though, that that's not what the board did. The board did not give consideration to the income status of the user. You know, but the problem is their argument is that it was a pretext, and so whenever somebody makes a pretext claim, they're never going to have direct statements. Instead, they're going to try and allege other types of facts to support an inference pretext. Right. But there's nothing here that can even be drawn on to gather an inference. The board is singularly focused with design elements that are common to a planning board. You can't just say, I bet in the back of their minds they don't like affordable housing without any glimmer of something to indicate that that's what it was. But I think what their argument is that the fact that they were treated differently from other similar developments is, in their view, the allegations that should be enough to get to pretext. And there wasn't really an analysis here of comparing to how others were treated. So I just sort of go back to that, why wasn't assuming that affordable housing could be enough to get this out of, animus against affordable housing developments could be enough under the case law to bring this sort of above the ordinary land use dispute. Why isn't there enough here, given that their allegations, it may be wrong in discovery, but their allegations that they were treated differently from other similar developments. Yeah. And again, I think I've already made this argument, so I don't want to waste more of your time. But I think the West Swansea project is indicative of the fact that the same developer with an affordable housing project had a very, very quick process through zoning and planning on another affordable housing project. That in and of itself is indicative of the fact that there was no animus towards this particular developer or affordable housing. Thank you. Thank you. Thank you. At this time, counsel for the appellant, please reintroduce yourself on the record. You have a one minute rebuttal. Thank you. Excuse me. James Harris for the appellant. A few very quick points. The West Swansea project did not go as smoothly as represented. The planning board required my client to put a very expensive pitched roof on that project when none of the other properties in the surrounding area were required to do the same. I also point out in SBT, the email that that case turned on, they got that email in discovery. They got it in discovery in a parallel state court case, but we have had no opportunity to develop anything similar to that. I will point out a few facts that are in the complaint, however, the planning board chair himself said repeatedly that the actions of the planning board were illegitimate. And we happen to benefit from having the same civil engineer represented all four projects, my clients and the three that we use as comparators. And he said repeatedly, Avinru was treated differently. Is it right that the animus based ground that you want us to say motivated the decision to single out your client isn't articulated by any actor and that you're asking us to infer it from the way non-affordable developers were treated? I will concede there's no explicit statement saying I don't want to have an affordable housing project here, but we have statements pressing my client about section 8 vouchers and putting a requirement about stable incomes on the tenants. We have planning board members saying I would not want this project in my neighborhood and voting based on popularity and therefore political self-interest. So I have to concede we don't have an explicit statement. What are the section 8 comments and the, what was the other one, the stabilized, who were those made by? Okay, so the stable income was a requirement imposed by the zoning board. After we prevailed at the Supreme Court and came back to get our special exception, they imposed a condition requiring all tenants to have stable incomes and stay at a range. And that I take is not anywhere within the code as a permissible factor? It's not within the zoning ordinance for sure. Now, the reality is it's an affordable housing project. My client gets tax credits to develop this project. So there are income requirements that he has to satisfy. But that caused a whole other problem that we had to work with council to get cleared up. It's indicative, in other words, of the pretext. And then what's the section 8 comment? The section 8 question came up several times, but it features most prominently if you look at the transcript of the planning board. The very first question from a planning board member was, you know, is this section 8 housing and what does that mean? So again, I think the complaint does provide sufficient factual allegations to allow us to remember how the planning board process goes. We don't get to ask planning board members questions. And we didn't participate in the matters for the other projects. So it's not as if we get to ask any of them, okay, well, why did you vote for this one and not that one? One last question. I take it that the affordable housing basis for denying it would be impermissible under the code? Yes. Well, under which code? I'm sorry. I don't know any of the codes that are under state law. Is that right or wrong? I don't think there's any reference in the zoning ordinance or the planning regulations that address that one way or the other. Right. Well, what about state law? So there's a state, there's a policy in favor of workforce housing that is on the books in New Hampshire. And that certainly exists. The West Swansea project was workforce housing. But I'm not aware of an explicit statement by the New Hampshire legislature or something to that degree saying it's discriminatory to act against senior housing or affordable housing. So if it's not discriminatory in sort of the common sense with the categories that are listed in our case law, and if it's not, if you're not going to be able to plausibly allege maliciousness or bad faith, what's the middle ground word that you want us to apply? Well, I do think we can prove bad faith and intent to injure. I don't want the court to misunderstand my position on that. But with respect to the separate, there are three, under Barrington Cove, there are three ways to prove an equal protection claim. One of which is malicious, bad faith, intent to injure. But the other is the impermissible considerations such as race or religion. And our position is that it's not an exhaustive list. It's an example by this court.  I granted you that. What is, so what's missing from the list that you want us to apply? In this instance, it's treating my client disparately because it was affordable housing and senior housing. And is that a claim of maliciousness? No, I read Barrington Cove as providing sort of three pathways. Well, then can you answer Judge Howard's question? If it's not maliciousness, it's not one of those protected categories, why is it, what is it about affordable housing that's like those enough? Otherwise, it could be, you know, he did it because it was too big or he was green. I don't want to have those people living in my town. If it's older people who are going to need allegedly more services or be more taxing on the town, if it's affordable housing, I don't want to have people, you know, of that income character in my neighborhood. It's the, I don't want those. What makes those fail under a rational basis or an irrationality test? I'm sorry, I didn't hear. What makes those characteristics fail as being something that can be considered under a rational basis or an irrationality test? There's no legitimate interest to prevent seniors or affordable housing, people who need affordable housing. In fact, there's a requirement in New Hampshire. There's no hospital nearby. Well, in this instance, what I would just say is that there is an explicit directive in New Hampshire for communities to work together on the affordable housing project. So Swansea itself can't exclude all affordable housing. Is that the workforce directive that you were mentioning is a policy under state law? Are you talking about something different? There's something different. One of these projects went to what's called the, I think it's the Southwest Regional Planning Commission for a review. They take a study of, you know, the wait times, for example, for seniors, and it's, you know, seven or eight years in this region in New Hampshire. So is this in the complaint or the record supporting the complaint, this, what you're now talking about? I believe there's a reference to the Southwest Planning Commission report in the record. Yes, there is. Okay. Shifting away from the, that's an awfully big holding you're asking us to make, because that, if I'm following, that means if a town has a rule limiting affordable housing in certain places, that's unconstitutional under the Equal Protection Clause. That's your view. My short-term view is that we should be able to explore that case and discover it. No, no. That's not, that's whether you can prove it. But your view is if you could prove it, that would be unconstitutional. There's no case holding that. There's no case holding that. So that's an awfully big thing for a court to say. Maybe a good thing for a court to say, but it's an awfully big thing for a court to say. I guess I would concede that, but I...  But on the, but you make, you also say something that would not be a big thing for a court to say, which is that there was malicious treatment of my client. Yes. What is the basis for that contention? Is it related to this argument about affordable housing or unrelated to it? Well, I think it's hard to separate that because of the nature of the project. So what, how does it run that you can deduce maliciousness in this case in a way that's like in SBT? So here are some of the things from the complaint that, that's the parallel SBT. Contradicting the advice of counsel in at least two different contexts. Voting based on popularity despite the New Hampshire Supreme Court telling them they can't do that. And voting based on the desire to preserve their own political self-interest. The poison pills jeopardizing the economics of the case. The ex-party communications that they did admit to in the open record that I know we didn't get to take discovery about what else might exist. The planning board members also voted in attempt to punish my client for not agreeing to waive a 65-day deadline. The planning board had 65 days from the application to rule. And when my client wouldn't agree because they wanted to have another appraisal done that some members stated openly, we're going to, we're not going to vote for this. And then your idea is somehow this isn't just accidental, it was actually directed at your client in particular because other clients, other people didn't get treated that way, who were identical except for this one feature of your client, which is that they were trying to build affordable housing. On that view, it's just a pure maliciousness claim about this particular individual given what he was trying to do, not in general, it's impermissible to have a view that affordable housing is bad. Yes. And again, I struggle a bit because the nature of the project is an affordable housing project, so it's hard to divorce those factors from the way my client was treated. Thank you. All right. Thank you very much. Thank you, Counsel. That concludes argument in this case.